UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
  :
TRANSATLANTIC LINES LLC,  :
  :        16 Civ. 3549 (PAE)
                               Petitioner,  :
  :        OPINION & ORDER
               -v-  :
  :
AMERGENT TECHS, LLC,  :
  :
                               Respondent.  :
  :
------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

This case is one of several in which either TransAtlantic Lines LLC ("TransAtlantic") or Amergent Techs, LLC ("Amergent") has attempted to compel the other to arbitrate their dispute over money Amergent claims it is owed by TransAtlantic, pursuant to a contract between them. Here, TransAtlantic seeks to compel Amergent to arbitrate in New York. *See* Dkt. 1 ("Petition" or "Pet."). Four motions are now pending. Amergent is the movant as to two: It moves to dismiss under Federal Rule of Civil Procedure 12(b)(2) and (6), Dkt. 14, and for sanctions under Rule 11, Dkt. 30. For its part, TransAtlantic moves to compel arbitration, Dkt. 6, and under Rule 72(a) to overturn a ruling by the Honorable Sarah Netburn, United States Magistrate Judge, to strike a memorandum, Dkt. 53.

For the reasons below, the Court grants Amergent's motion to dismiss, on the ground that it lacks personal jurisdiction over Amergent, and on that basis denies TransAtlantic's motion to compel arbitration. The Court, however, denies Amergent's motion for sanctions, and affirms Judge Netburn's decision to strike the memorandum.

## I.     Background[1]

On or about March 12, 2010, the parties entered into an agreement under which Amergent agreed to provide certain services and assistance to TransAtlantic with respect to TransAtlantic's obligations as a vessel manager to ensure regulatory compliance. *See* Pet. Ex. A ("Agreement"). There is now, both parties agree, a dispute as to whether, as Amergent claims, it is owed money under the Agreement, or whether, as TransAtlantic claims, Amergent's bills reflect excessive work and costs. *See* Pet. ¶ 6; *see also* Amergent Opp'n 2.

The Agreement contains an arbitration clause. It states that the "Agreement shall be construed under Connecticut law" and that "[a]ll disputes under this Agreement shall be resolved through arbitration." Agreement ¶ 17. The parties agree that the clause is valid, and they appear to agree that their dispute is, ultimately, to be resolved in arbitration. Pet. ¶ 7; Amergent's Opp'n 2. The Agreement does not, however, specify an arbitral forum, and the parties have not agreed to one. As a result, Amergent has initiated an arbitration, and three lawsuits have been filed in different districts, in each of which either TransAtlantic or Amergent has petitioned to compel arbitration in a forum of the petitioning party's choice.

TransAtlantic filed the first petition, on November 17, 2015, in the United States District Court for the District of Connecticut. There, TransAtlantic moved to compel arbitration in the District of Connecticut, and asked the district court to appoint a single arbitrator from a list of five members of the Society of Maritime Arbitrators ("SMA"). *See TransAtlantic Lines LLC v. Amergent Techs, LLC*, No. 15 Civ. 1681 (AWT), 2016 WL 2946143, at *1 (D. Conn. May 11,

---

[1] The Court refers herein to the following filings as follows: Mem. Supp. Amergent's Opp'n Mot. Compel Arbitration, Dkt. 14 ("Amergent's Opp'n"); Reply Decl. Peter Gutowski, Dkt. 20 ("Gutowski Decl."); Reply Mem. Supp. Amergent's Mot. Dismiss, Dkt. 21 ("Amergent's Reply"); Decl. Jeffrey D. Poindexter, Dkt. 22 ("Poindexter Decl."); Decl. Peter. J. Gutowski Opp'n Rule 11 Mot., Dkt. 39 ("Gutowski Rule 11 Decl.").

2

2016). On May 11, 2016, the district court in Connecticut dismissed the petition. The district court noted that, on November 25, 2015, soon after TransAtlantic's petition was filed, Amergent had commenced an arbitral proceeding in California, under the auspices of the Marine Arbitration Association ("MAA"), and that TransAtlantic had refused to participate in the proceeding. *Id.* at *4.[2] The district court reasoned that because "the arbitration clause does not specify a venue for arbitration," "Amergent's attempt to arbitrate in California was not contrary to the parties' agreement," and there was, therefore, no basis to find "a refusal to arbitrate on Amergent's part." *TransAtlantic Lines LLC*, 2016 WL 2946143, at *4. Accordingly, the district court held, there was no basis on which it could compel Amergent to arbitrate elsewhere. *Id.* at *3-4.

On May 12, 2016, the day after the Connecticut lawsuit was dismissed, each party formally demanded that the other arbitrate in its preferred forum. Referring to the arbitration it had commenced in California, Amergent demanded of TransAtlantic: "Please advise no later than 5:00 p.m. EST on May 13, 2016, if you agree to arbitrate Case No. 11301501 with the [MAA]." Gutowski Rule 11 Decl. Ex. 6. TransAtlantic, in turn, demanded of Amergent: "Please consider this as TransAtlantic's demand for arbitration in New York of all disputes under the subject contract. Please advise by 1300 today [1 p.m.] East Coast time whether Amergent consents to arbitration in New York." Pet. Ex. B, Dkt. 1-1.

Also on May 12, 2016, after the 1 p.m. deadline it had set had passed, TransAtlantic filed the Petition in this case. In it, TransAtlantic sought to compel arbitration in New York; it asked the Court to appoint one of five SMA-affiliated arbitrators. Pet. ¶¶ 18, 20. TransAtlantic contended that Amergent—which had been found in the Connecticut case not to have refused to

---

[2] *See also* Amergent Opp'n. 2-3; Gutowski Rule 11 Decl. Exs. 1-8, Dkt. 39-1.

arbitrate—was now refusing to do so, by failing to accede to TransAtlantic's demand of the same day that it arbitrate pursuant to the SMA in New York. Pet. ¶ 14.

Finally, on May 12, 2016, after TransAtlantic filed the Petition here, Amergent filed a petition in the United States District Court for the Southern District of California. Amergent sought to compel TransAtlantic to arbitrate in California, specifically, in the arbitration it had initiated before the MAA. *See* Petition, *Amergent Techs, LLC v. TransAtlantic Lines LLC*, No. 16 Civ. 1140 (JLS) (S.D. Cal. May 12, 2016) (filed in this case at Dkt. 7-5). The district court in California has stayed that case pending this Court's ruling on Amergent's motions to dismiss. *See* Order Extending Stay, *Amergent Techs, LLC*, No. 16 Civ. 1140 (JLS) (S.D. Cal. July 7, 2016) (filed in this case at Dkt. 20-3).

## II.     Amergent's Motion to Dismiss for Lack of Personal Jurisdiction

Amergent moves to dismiss on multiple grounds. These include the same ground on which the Connecticut district court found dismissal required: that Amergent, far from resisting arbitration so as to justify an order compelling it to arbitrate, had itself initiated an arbitration on terms that appeared consistent with the parties' arbitration agreement and repeatedly expressed willingness to arbitrate. While that basis for dismissal appears substantial, this Court need not reach that issue. That is because dismissal of the Petition is required, at the threshold, for lack of personal jurisdiction over Amergent.

### A.     Facts Relevant to Personal Jurisdiction

TransAtlantic's Petition does not recite any basis on which this Court could find personal jurisdiction over Amergent. It does not allege that Amergent has any contacts with this District, nor that Amergent has undertaken activities within it. Indeed, apart from alleging that TransAtlantic (1) demanded arbitration in New York, Pet. ¶¶ 12-13, and (2) now seeks to arbitrate in New York, *id.* ¶ 18, the Petition does not mention New York. And the section of the

Petition entitled "Jurisdiction," while reciting the Federal Arbitration Act, 9 U.S.C. §§ 2 *et seq.* as the basis for subject matter jurisdiction, is conspicuously silent as to personal jurisdiction.

Defending against Amergent's motion to dismiss for lack of personal jurisdiction, TransAtlantic has instead filed materials with the Court, which, it asserts, reflect that the parties agreed to arbitrate before the SMA, an arbitral body headquartered in New York, and argues that Amergent thereby can be sued here. *See, e.g.*, Dkts. 19, 27. Specifically, TransAtlantic argues that Amergent, in a January 28, 2016 email by its counsel, Jeffrey D. Poindexter, entered into "a plenary agreement to New York arbitration." Pet'r's Sur-Reply 1; *see also* Gutowski Decl. Ex. 6 (the "Poindexter Email"), Dkt. 20-1. Poindexter's email was sent to TransAtlantic's counsel, Peter Gutowski, and copied another counsel for Amergent, Rick Horn. In relevant part, Poindexter's email stated:

> My client initiated an arbitration with SMA, which you caused to be dismissed. My client has agreed to arbitrate with SMA, and has been pushing for arbitration for months. I'm very certain that if there is a disagreement over the specific arbitrator that SMA will have the ability to decide that even if it does not have a specific rule addressing the topic.

Poindexter Email 1.

Amergent disputes that the Poindexter Email reflects a meeting of the minds between the parties to arbitrate before the SMA. As proof of this, Amergent submits the email Gutowski sent Poindexter in response the same day, on TransAtlantic's behalf. *See* Poindexter Decl. Ex. 7 (the "Gutowski Response"), Dkt. 22-1.[3] To denote his response to the Poindexter Email, Gutowski inserted parenthetical comments into its text. The relevant part of the exchange is as follows, with Gutowski's response appearing in bold and underlined:

---

[3] The Gutowski Response cc'ed Horn and three others (Manny Molina, Michael Dehart, and Edward Keane) as to whose roles and affiliations the record is silent.

5

> My client has agreed to arbitrate with SMA, and has been pushing for arbitration for months. **(Inaccurate – you only recently said you would agree to SMA but only to the shortened procedure, which we consider inappropriate – see mine today).** I'm very certain that if there is a disagreement over the specific arbitrator that SMA will have the ability to decide that even if it does not have a specific rule addressing the topic. **(Not accurate – no such mechanism.)**

Gutowski Response 1–2 (emphasis added).

### B. Governing Legal Principles

"[T]he plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (per curiam) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Id.* (quoting *Ball*, 902 F.2d at 197). A plaintiff may also defeat a pre-discovery motion by submitting "affidavits and supporting materials" containing "an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)).

Where a court resolves a challenge to jurisdiction without an evidentiary hearing or discovery, then the "pleadings and affidavits are construed in the light most favorable to the plaintiff, and all doubts are resolved in its favor." *Mazloum v. Int'l Commerce Corp.*, 829 F. Supp. 2d 223, 227 (S.D.N.Y. 2011); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993) ("[W]here the issue is addressed on affidavits, all allegations are construed

6

in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." (citation omitted)). But "resolving all doubts in the plaintiff's favor is not the same as blindly crediting all allegations regardless of their factual support." *Melnick v. Adelson–Melnick*, 346 F. Supp. 2d 499, 502 n.17 (S.D.N.Y. 2004). Thus, when "determining whether a plaintiff has met this burden, [a court] will not draw argumentative inferences in the plaintiff's favor," *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (internal quotation marks omitted), nor will a court "accept as true a legal conclusion couched as a factual allegation," *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### C. Discussion

Here, as noted, TransAtlantic's pleadings supply no basis for the exercise of personal jurisdiction over Amergent. TransAtlantic relies instead solely on the materials it submitted, specifically Poindexter's email exchange with Gutowski. It contends that this exchange reflects an agreement between the parties to arbitrate under the SMA, which, TransAtlantic argues, in turn bespeaks the parties' consent to suit in New York, SMA's headquarters. Neither party disputes the authenticity of these emails, or argues that other communications (*e.g.*, oral ones) are relevant to this issue. Thus, the Court may resolve, on the papers submitted, Amergent's claim as to personal jurisdiction.[4]

---

[4] *See M. Shanken Commc'ns, Inc. v. Variant Events, LLC*, No. 10 Civ. 4747 (CM), 2010 WL 4159476, at *4 (S.D.N.Y. Oct. 7, 2010) ("Because personal jurisdiction is 'inherently a matter requiring the resolution of factual issues outside of the pleadings . . . all pertinent documentation submitted by the parties may be considered in deciding the motion.'" (quoting *St. Paul Fire & Marine Ins. Co. v. Eliahu Ins. Co.*, No. 96 Civ. 7269 (MBM), 1997 WL 357989 (S.D.N.Y. June 26, 1997), *aff'd*, 152 F.3d 920 (2d Cir. 1998)).

In concept, of course, Amergent is correct that an agreement to arbitrate in New York could support personal jurisdiction for a lawsuit in New York compelling compliance with that agreement.[5] The issue here, however, is whether the parties' communications reflect any such agreement. TransAtlantic argues that, although the Agreement is silent as to the arbitral forum, the email exchange between Poindexter and Gutowski modified the Agreement, so as to require arbitration before the SMA. *See* Pet'r's Reply Mem. 3. Amergent disputes that interpretation, arguing that the exchange does not reflect an agreed-upon modification. Rather, Amergent argues, Poindexter's email proposed arbitrating before the SMA, but on terms that TransAtlantic rejected, as reflected in Gutowski's email response, and therefore no modification was effected. *See* Amergent's Reply, Dkt. 21.

Pursuant to the parties' Agreement, the Court applies Connecticut law to the issue of contract formation presented by TransAtlantic's claim of modification.[6] Under Connecticut law,

---

[5] A "party who agrees to arbitrate in New York 'must be deemed to have consented to the jurisdiction of the court that could compel the arbitration proceeding in New York. To hold otherwise would be to render the arbitration clause a nullity.'" *Stolt Tankers BV v. Allianz Seguros, S.A.*, No. 11 Civ. 2331 (SAS), 2011 WL 2436662 (S.D.N.Y. June 16, 2011) (quoting *Victory Transp. Inc. v. Comisaria Gen. de Abastecimientos y Transportes*, 336 F.2d 354, 363 (2d Cir. 1964)); *see also Abbacor, Inc. v. Miller*, No. 01 Civ. 0803 (JSM), 2001 WL 1006051, at *3 (S.D.N.Y. Aug. 31, 2001) ("[I]n certain circumstances, a defendant's actions constitute consent to personal jurisdiction."); *Ins. Corp. v. Compagnie des Bauxites*, 456 U.S. 694, 703 (1982) ("[B]ecause the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived."). It is, therefore, "well-settled that federal courts applying New York law have personal jurisdiction over parties that agree to arbitrate their disputes in New York." *American Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 352 (2d Cir. 1999); *see also Titan Mar. Indus., Inc. v. Marina Funding Grp., Inc.*, No. 99 Civ. 12087 (AKH), 2000 WL 1616991, at *1 (S.D.N.Y. Oct. 27, 2000) (finding consent to personal jurisdiction when a contract stated that "any dispute arising under this Agreement shall be settled by arbitration in New York, in accordance with the rules of the Society of Maritime Arbitrators of N.Y. Inc").

[6] The parties did not brief the issue of choice of law, but Connecticut law clearly applies. When, as here, a federal court sits in diversity, the court applies the forum state's choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under New York law,

8

a court determines if a contract is modified by applying "the same tests and scrutiny that apply to the initial determination of whether an enforceable agreement exists." *Vasily v. MONY Life Ins. Co. of Am.*, 104 F. Supp. 3d 207, 214 (D. Conn. 2015). Thus, for a contract to be modified, "there must be an unequivocal acceptance of an offer." *Bridgeport Pipe Eng'g Co. v. DeMatteo Constr. Co.*, 268 A.2d 391, 393 (Conn. 1970); *see also Cheverie v. Ashcraft & Gerel*, 783 A.2d 474, 484 (Conn. 2001) ("To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to be based on an identical understanding by the parties." (quoting *Richter v. Danbury Hospital*, 759 A.2d 106, 110 (Conn. App. Ct. 2000))); *Herbert S. Newman & Partners, P.C. v. CFC Constr. Ltd. P'ship*, 674 A.2d 1313, 1320 (Conn. 1996) (A valid contract modification requires "mutual assent to the meaning and conditions of the modification.").

Measured against these familiar standards, TransAtlantic's claim of modification falls far short. Poindexter's email certainly can be read as an offer by Amergent to arbitrate before the SMA. But Gutowski's response on behalf of TransAtlantic unequivocally rejected that bid. No

---

courts "will generally enforce choice-of-law clauses in contracts 'so long as the chosen law bears a reasonable relationship to the parties or the transaction.'" *Hedgeco, LLC v. Schneider*, No. 08 Civ. 494 (SHS), 2009 WL 1309782, at *3 n.1 (S.D.N.Y. May 7, 2009) (quoting *Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 7 N.Y.3d 624 (2006)). Here, the Agreement specifies that it "shall be construed under Connecticut law," Agreement ¶ 17, and TransAtlantic has pled that it is "an entity organized and existing under the laws of a Connecticut with an office and principal place of business located at Lincoln Ave., Greenwich, Connecticut." Pet. ¶ 4. Under New York law, these reasons are sufficient to enforce the Agreement's choice of Connecticut law. *See, e.g., Woodling v. Garrett Corp.*, 813 F.2d 543, 551-552 (2d Cir. 1987) (enforcing a choice-of-law clause when one party's principal place of business was in the chosen state); *Follman v. World Fin. Network Nat'l Bank*, 721 F. Supp. 2d 158, 161 (E.D.N.Y. 2010) ("Here, because defendant's principal place of business is in Ohio, and defendant's [agreement] instructs that Ohio law governs the agreement, its choice-of-law provision will be enforced."); *Finucane v. Interior Const. Corp.*, 695 N.Y.S.2d 322, 325 (App. Div. 1999) ("The parties, in agreeing to have the laws of Oklahoma govern their contract, selected the laws of a State that has a reasonable relationship to the contract since [defendant's] principal place of business is located in Oklahoma.").

9

words of acceptance appear in his response. The response nowhere conveys that TransAtlantic agrees to arbitrate before the SMA. On the contrary, Gutowski's successive annotations to Poindexter's email reflect his disagreement: both as to the content of his prior discussions with Poindexter as to whether even Amergent had agreed unequivocally to arbitrate before the SMA (he terms Poindexter's account "Inaccurate"), and as to whether SMA has a mechanism capable of resolving disputes as to the specific arbitrator ("Inaccurate – no such mechanism"). Gutowski Response 1–2. On these materials, the Court cannot find an unequivocal offer and acceptance to identical material terms, or close. And TransAtlantic's Petition in this case, while asking the Court to order arbitration before the SMA, tellingly nowhere alleges that the parties had mutually agreed to arbitrate before the SMA. Instead, TransAtlantic asks the Court, in light of the Agreement's silence and the parties' lack of agreement as to the arbitral body, to appoint an SMA arbitrator.

In short, TransAtlantic has not come forward with evidence to the effect that the parties modified their agreement so as to support personal jurisdiction in New York. In light of the absence of any other claimed basis for asserting personal jurisdiction over Amergent, the Court cannot exercise personal jurisdiction over Amergent. Accordingly, TransAtlantic's Petition must be dismissed, and its motion to compel arbitration must be denied.

### D. Amergent's Rule 11 Motion

Amergent argues that TransAtlantic's conduct warrants sanctions under Federal Rule of Civil Procedure 11 because it was objectively unreasonable to contend either that (1) Amergent's failure to respond within three hours to TransAtlantic's arbitration demand was an unequivocal rejection; or (2) Amergent consented to personal jurisdiction. *See* Dkt. 31.

Rule 11 states: "By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief," that a position "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," Fed. R. Civ. P. 11(b)(1), and that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," *id.* 11(b)(2). "In evaluating whether the signer of a filing has violated Rule 11, the district court applies an objective standard of reasonableness, examining whether, under the circumstances of a given case, the signer has conducted a 'reasonably inquiry' into the basis of a filing." *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 73 F.3d 1253, 1257-58 (2d Cir. 1996) (citing *Business Guides, Inc. v. Chromatic Commc'n Enters., Inc.*, 498 U.S. 533, 548 (1991)). A court must "avoid hindsight and resolve all doubts in favor of the signer." *Hutter v. Countrywide Bank, N.A.*, 41 F. Supp. 3d 363, 387 (S.D.N.Y. 2014) (citing *Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir. 1986)).

On considered review, TransAtlantic's contentions do not justify sanctions. To be sure, Amergent's first basis for pursuing sanctions—the 1 p.m. deadline that TransAtlantic unilaterally set for acceptance of its arbitration demand of the same day—may fairly be viewed as peremptory. A party that had been principally interested in obtaining its adversary's consent to its arbitral terms, as opposed to positioning itself to promptly file this lawsuit, would surely have given its adversary more time to reflect on, and respond to, such a demand. But the Court is unprepared to say that the deadline was so unrealistic as to make unreasonable TransAtlantic's claim that Amergent rejected the offer by not responding in time. By the time of TransAtlantic's offer, the parties had already litigated TransAtlantic's bid for arbitration in Connecticut, and their

11

counsel (Poindexter and Gutowski) had exchanged views on the subject. Thus, it was not unreasonable for TransAtlantic to assume that Amergent had given considered attention to the subject. Resolving all doubts in favor of TransAtlantic, as the Court must on Amergent's Rule 11 motion, the Court cannot say that TransAtlantic's claim of rejection was unreasonable.[7] Amergent's second basis for pursuing sanctions presents a closer question. The Court has firmly rejected TransAtlantic's claim of a contractual modification as clearly deficient on the merits. And the assembled record suggests that TransAtlantic may have not given studied attention to the basis for claiming personal jurisdiction before filing this lawsuit. However, on balance, again resolving all doubts in favor of TransAtlantic, the Court is unprepared to find its litigation position sanctionable. While its legal argument to the effect that the parties had modified the Agreement was clearly wrong, that argument was not so clearly frivolous as to justify the extreme remedy of sanctions.

The Court, therefore, denies Amergent's motion for sanctions.

### E. TransAtlantic's Rule 72(a) Objection

In the course of litigating Amergent's motion for sanctions under Rule 11, TransAtlantic filed a memorandum in support of sanctions—on Amergent. *See* Dkt. 44. Judge Netburn struck TransAtlantic's memorandum, Dkt. 46, in part, because "filing a memorandum of law in support of a non-existent cross-motion for sanctions is plainly improper." Dkt. 51, at 4-5. TransAtlantic now challenges that ruling. Dkt. 53.

Federal Rule of Civil Procedure 72(a) provides that "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous

---

[7] TransAtlantic's claim that Amergent, by its silence, rejected its offer was, further, confirmed by later events: Amergent did not, thereafter, ask TransAtlantic to revive its May 12, 2016 offer so as to enable Amergent to accept it.

or is contrary to law." A magistrate judge's ruling on a nondispositive matter may be set aside only if the district court determines the ruling to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Under this highly deferential standard, magistrate judges "are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused." *Ritchie Risk–Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 78 (S.D.N.Y. 2012) (quoting *AMBAC Fin. Servs., LLC. v. Bay Area Toll Auth.*, No. 09 Civ. 7062 (RJH), 2010 WL 4892678, at *2 (S.D.N.Y. Nov. 30, 2010)); *see also Edmonds v. Seavey*, No. 08 Civ. 5646 (HB), 2009 WL 2150971, at *2 (S.D.N.Y. July 20, 2009) (noting that the fact that "reasonable minds may differ on the wisdom of granting [a party's] motion is not sufficient to overturn a magistrate judge's decision").

Judge Netburn's basis for striking TransAtlantic's filing, far from being an abuse of discretion, was plainly valid. Had TransAtlantic sought to move for Rule 11 sanctions, it could and should have done so by making a proper motion, under Rule 11(C)(2). Accordingly, the Court affirms Judge Netburn's ruling.[8]

## CONCLUSION

For the foregoing reasons, the Court grants Amergent's motion to dismiss for lack of personal jurisdiction, denies Amergent's motion for Rule 11 sanctions, and affirms Judge Netburn's ruling striking TransAtlantic's memorandum of law. The parties shall each bear their own fees and costs associated with this litigation.

---

[8] To the extent that TransAtlantic's filings may now arguably be construed to raise a cross-motion for sanctions, the Court rejects the cross-motion as meritless.

The Clerk of Court is respectfully directed to terminate all open motions and to close this case.[9]

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: January 6, 2017
       New York, New York

---

[9] TransAtlantic's suggestion that the dismissal of this case will leave the parties in "arbitration limbo," Dkt. 8, at 6 n.4, is wrong for two reasons. First, Amergent's lawsuit in the Southern District of California to compel TransAtlantic to arbitrate there, which has been stayed pending the outcome of this lawsuit, remains pending. Second, recent case law in this Circuit supports that, where the parties have agreed to arbitrate but not on an arbitral forum, and where one party has initiated an arbitration proceeding in a forum not precluded by the parties' agreement, it is for the arbitrator, not a court, to decide procedural questions governing the arbitration. *See, e.g., Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 445 (2003) (plurality opinion) (the question of "what kind of arbitration proceeding the parties agreed to" is a procedural question for which an arbitrator is better equipped to decide); *Carrington Capital Mgmt., LLC v. Spring Inv. Serv., Inc.*, 347 F. App'x 628, 632 (2d Cir. 2009) (unpublished order) (refusing to compel the defendant to arbitrate because it had already initiated an arbitration that was not contrary to the parties arbitration agreement); *cf. UBS Fin. Servs., Inc. v. W. Virginia Univ. Hosps., Inc.*, 660 F.3d 643, 655 (2d Cir. 2011) (holding that the question of venue "is a procedural issue that [arbitrators] should address in the first instance, and that [district courts] lack[] subject matter jurisdiction to resolve it").